### DRAKE ET AL. V. GILPIN MIN. CO.

1. CONVEYANCE OF MINING CLAIM — GRANTOR CANNOT ACQUIRE ADVERSE CLAIM THERETO.— One invested with possessory title to a mining claim, and who, in pursuance of a contract of sale thereof, executes and places in escrow a deed to the purchaser, with covenants of warranty aga'nst all adverse claims and incumbrances, except as against the United States. cannot lawfully himself acquire an adverse claim thereto, while seeking to enforce the collection of the purchase-money, by judgment against the purchaser.
2. LACHES OF GRANTEE DO NOT AVAIL GRANTOR.— The neglect of the grantee to comply with the mining laws of the government, by reason of which its possessory rights were liable to forfeiture, gave its grantor no right to enter and acquire an adverse title to the claim; such conduct being both a breach of faith with his grantee and a violation of his covenants.
3. EQUITY NEVER ASSISTS IN ENFORCEMENT OF UNJUST CLAIMS.— One seeking to destroy the very title he has contracted to convey will not be assisted by a court of equity to collect the purchase-money therefor out of other property of the grantee by subordinating the valid claims of third parties to the payment of such purchase-money.

*Error to District Court of Arapahoe County.*

Mr. L. C. ROCKWELL and Messrs. TELLER & ORAHOOD, for plaintiff in error.

Mr. L. B. FRANCE, for defendants in error.

RICHMOND, C.   In April, 1879, Lester Drake was interested as owner in the Williams lode, situated in Gilpin county.   The extent of such interest is immaterial, as he held contracts with the other owners giving him the right, for the time being, to sell the entire property.   The plaintiff had been unsuccessful in his efforts to make such sale until he met defendants Weitbrec and Cooper.   He was then in embarrassed circumstances, and the time of these options was about to expire when the negotiations with these defendants were entered upon.   Upon the last day he succeeded in making a contract with them whereby they were to take six hundred feet of the property and pay therefor the sum of $36,500.   About this time the defendants Weitbrec and Cooper, with one Parker, organized a corporation known as the Gilpin County Mining Company, in whose name the negotiations were finally consummated, although it is claimed that it was a personal enterprise on the part of Weitbrec and Cooper, with which the company had nothing whatever to do.   The title to fifty feet of the six hundred being in dispute, it was arranged that the sale should be completed without regard to that portion of the claim. A separate agreement in writing was executed as to this, wherein the price to be paid therefor was fixed at $2,500. This amount was made payable on the 15th of September, 1880, or as soon as a good and sufficient title thereto could be furnished, Drake agreeing to furnish such title with covenants of warranty, except as against the United States. The price agreed upon for the five hundred and fifty feet was $34,000.   This sum was paid as follows: Company stock for the corporation, for which Drake received in cash from Weitbrec and Cooper, $7,500; the notes of the company for

$20,500, which were paid by Weitbrec and Cooper, and the assumption by the company of the payment of a note of plaintiff for $6,000. Some of these notes were secured by a trust-deed upon the property. This part of the transaction seems to have been fully closed at the time and a deed executed and delivered to the company for the five hundred and fifty feet by Drake.

In the year 1881, Drake, claiming to have secured the title to the remaining fifty feet, tendered a deed to the company for the same and demanded the $2,500 agreed to be paid thereafter. The company claiming some misrepresentation in reference to the property, declined to accept the deed and refused to pay the money. Thereupon Mr. Drake brought suit for this amount with interest. In that suit he obtained judgment against the company and caused an execution to be issued and levied upon the mining property, theretofore transferred by him to the company, but made no further attempt to satisfy the writ until the institution of the present action. Some of the notes given in part payment of the original purchase price falling due in the meantime, Weitbrec and Cooper caused the property to be advertised for sale by the trustee. Drake thereupon instituted this suit to restrain the sale and subordinate the lien of the trust-deed to the lien of his judgment.

The pleadings of this case are somewhat voluminous, and I deem it unnecessary to make extended extracts therefrom. Drake having obtained the judgment for $2,500, which judgment remained unsatisfied, and having entered upon the possession, as he claims, of the fifty feet of ground under the mining laws of the United States, as public land, and, while claiming title thereto, seeks to subordinate the lien of the trust-deed to the lien of his judgment, and subject the property of the defendant mining company to sale in satisfaction of said judgment. He alleges that the defendants Weitbrec and Cooper are the sole owners of all the stock of the Gilpin County Mining Company, that they have declared dividends resulting from the products of the

mine when said company was indebted to him; that the various notes secured by the said deed of trust were not legal obligations against the company, and that it was in no way indebted to Cooper and Weitbrec by reason of the execution of these said notes. Drake having deceased before the cause was reached for trial, the action was continued in the name of his executors, the present plaintiffs in error. A trial to the court without a jury resulted in findings and judgment for the defendants.

Much appears in the complaint which is without bearing upon the actual controversy between the parties. It does not appear, however, by averment or otherwise, that any of the defendants are insolvent, and it is not shown, either by testimony or by the pleadings, that the plaintiff was induced by fraud or misrepresentation to enter into the contract of sale.

The consideration to be paid for the fifty feet was the sum of $2,500; the judgment against the company was rendered accordingly. It is admitted by the pleadings (the defendants having alleged it and the plaintiff not having denied it) that as a part of such judgment it was ordered and adjudged by the court that the said plaintiff deposit, and keep on deposit, with the clerk of the district court a deed of conveyance of said fifty feet of said Williams lode, said deed to be delivered to the defendant, the Gilpin County Mining Company. Thereafter, and before the institution of this suit, Drake having, as he alleges, deposited the deed to the property with the clerk of said court, assumed and avers in his replication to the answer, that the company had neglected to comply with the mining laws of the United States; had forfeited their right to said fifty feet, and that he had the right as a citizen of the United States to enter upon and repossess himself of the title and possession of said property. And this, too, in the face of his contract with the defendant company to make a good title to said fifty feet of ground, free and clear from all disputes, adverse claims and incumbrances, with covenants of

warranty, except as against the government of the United States. Whether such a deed was tendered or deposited in the hands of the clerk is put in issue by the pleadings; the burden of such issue was clearly upon the plaintiff, but no proof was offered thereon by either party. Plaintiff thus fails to show that he had complied on his part with the judgment which he is now seeking to enforce. Instead of doing so, he claims the property while seeking to recover the purchase price. There is no better rule known to equity jurisprudence than that "He who seeks equity should do equity." Drake was obliged to make a deed to the property before he could in equity and good conscience demand the payment of the $2,500. As a "jumper" he entered upon the possession of that property, and asserts an absolute claim to it by reason of a relocation, and thereafter comes into a court of equity and says: I want the $2,500 which these defendants obligated themselves to pay me for fifty feet of this ground which I originally contracted to sell to them, and which I am now the owner of. In other words, it is an effort by plaintiff to obtain from a court of equity a decree for the enforcement of that part of the judgment which was against defendants, while he leaves unperformed that part which was against himself. He seeks to recover the consideration for premises sold, while he withholds the title deed and the possession, claiming under an adverse title. Under his contract, as recited in his own pleadings, he was obligated to furnish a satisfactory title with covenants of warranty to that fifty feet. Under the decree of the court allowing him a judgment for $2,500 and execution thereon, he was bound to execute and make a deed to it. Being so bound, he says: I want the court to say that the defendants Weitbrec and Cooper had no right to go into the market and purchase promissory notes of the defendant company secured by a deed of trust; they had no right to declare dividends arising from their proceeds of their mining operations upon this claim; they had no right to appropriate to themselves individually any sums of money

resulting from the products of the said company's operations while I remained a creditor of the company, and by reason of their conduct in this particular, by reason of the fact that they have done things they ought not to have done, I ask that the property of the company be relieved of those incumbrances and that I shall receive full satisfaction of my claim against the company in the sale of the identical five hundred and fifty feet which they purchased, notwithstanding the fact that I am now the possessor and owner of fifty feet to which I contracted to give a perfect and satisfactory title, though I have not given the same.

If plaintiff had deposited and kept on deposit the deed required by the judgment, and some third party, not knowing all the circumstances, had entered upon this fifty feet of ground, then the prayer of this complaint would appear in a different light; but how the individual, who was familiar with the defective title he possessed when he contracted to make the sale, who was familiar with the fact that the $2,500 was due to him only upon making a satisfactory title, assumes that he can ask the aid of a court of equity in the enforcement of that judgment and the payment of that claim under the circumstances here presented, is beyond my fathoming. It is claimed that the sale was, in fact, made by Drake to Weitbrec and Cooper, and not to the company. And yet at the time when Drake was in possession of all the facts, he instituted suit against the corporation and obtained judgment against it as the sole vendee. It will be conceded that the conduct of Weitbrec and Cooper concerning the affairs of the corporation is open to be questioned by a creditor, a *bona fide* creditor, an equitable creditor, one who could step into a court of equity with clean hands, and who, coupled with his equity, could show the insolvency of the defendant company; but when such a claim to equity emanates from one who seeks to get something for nothing, who occupies the position of being now the owner and possessor of the identical property which moved the defendant company to execute the agree-

ment as evidence of their obligation to him, seeks to obtain a decree for the sale of that portion of the property for which he has been paid in full, his claim does not address itself favorably to a court of equity.

Drake evidently sought by his complaint and by his testimony, and the counsel on behalf of appellant herein seeks to convey, the impression that he never understood the language of the papers that he was signing. This cannot be true, especially it cannot be true in the face of his own testimony.

" Q. Under what circumstances did you sign that paper?

" A. When I sold the property up there. It must have been on the table in Mr. Orahood's office, and Mr. Orahood must have told me to sign it and I signed it without any hesitation. He told me to sign that paper and to sign other papers and I signed it. I did it without any question."

Drake was present at the time with his counsel, and the court below was warranted in concluding from the testimony that Drake understood fully at the time the nature of the transaction upon which he entered. It is claimed the capital stock was issued to Drake in order that it might appear to be fully paid up. If this be true, and it seems quite probable from the evidence, plaintiff's position is not benefited thereby. After having taken and retained the benefits of the transaction for these many years, he cannot now be heard to complain.

I am clearly of the opinion that the proof is not sufficient to warrant a decree for the plaintiff in this action, and that the judgment of the district court should be affirmed.

BISSELL and REED, CC., dissent.

PER CURIAM. For the reasons stated in the foregoing opinion the judgment of the court below is affirmed.

*Affirmed.*